Joseph K. McCUTCHEN, Appellant,

v.

The SINGER COMPANY and Kingston Mills, Inc., Appellees.

The SINGER COMPANY and Kingston Mills, Inc., Appellants,

v.

Joseph K. McCUTCHEN, Appellee.

No. 22941.

United States Court of Appeals Fifth Circuit.

Nov. 20, 1967.

Rehearing Denied Feb. 14, 1968.

McCutchen's patent application for a tufting machine and method was filed January 26, 1956, and granted on March 31, 1959, containing fourteen separate claims. Plaintiff's invention describes a machine which "can produce severed or unsevered loops with any or all of its multiple needles, the arrangement being such that certain needles which have previously sewed severed loops into the fabric base may be caused during the continued operation of the machine to produce unsevered loops, and vice versa".[2]

Plaintiff contends that at the time of his invention "there was no machine which would effectively produce both cut pile and uncut pile on a single needle-looper-cutter combination, on one pass of the base fabric through the machine." The tufting machines have broad application in the tufted textile industry, especially in the production of tufted carpeting, multiple needle machines now being available of 1,200 to 1,500 needles in a single row able to produce 12 to 15 feet widths with a production of 300 to 350 linear yards per 8-hour shift. Eighty per cent of the total carpet and rug output is now on tufted machines.

Plaintiff further contends that the "broadest aspect" of his invention is "in his discovery that an uncut loop could be effectively removed from the free end of a looper facing in the direction opposite to that of the fabric feed through the machine, thus enabling the traditional machine for producing cut pile to be adapted also for production of uncut pile, the same looper performing both functions without change of direction and without removal, adjustment or discontinuance of the cutting device." Thus plaintiff states that he has invented a machine which enables "a base fabric, in one pass through a single machine to have all cut pile on its underside or to have all uncut pile or to have interspersed rows of both or to have intermittent cut and uncut pile in a single

Ernest P. Rogers, Thomas C. Shelton, Atlanta, Ga., for appellant.

Asa W. Candler, Atlanta, Ga., Granville M. Brumbaugh, New York City, for appellee.

Before TUTTLE and AINSWORTH, Circuit Judges, and FULTON, District Judge.

AINSWORTH, Circuit Judge:

This is a patent infringement suit by Joseph K. McCutchen, plaintiff, against The Singer Company and Kingston Mills, Inc., defendants,[1] involving plaintiff's United States Patent No. 2,879,728. From the judgment of the district court (sitting without a jury), plaintiff has appealed and defendants have cross appealed.

---

1. McCutchen is a citizen of Dalton, Georgia; The Singer Company is a New Jersey corporation doing business in Georgia; and Kingston Mills, Inc. is a Georgia corporation and a lessee of one of Singer's machines said to infringe McCutchen's patent in this case.

2. The quoted portion is from the language of the patent, column 1, lines 38–43.

row of tufting, and by the attachment of any traditional patterning device, * * * to produce areas of cut and uncut loops in the base fabric, on one pass through the machine, to form a predetermined pattern or design by the contrast of such areas."

In his suit plaintiff avers that two machines of defendant Singer, known as Form 1 and Form 2, infringe his patent. Defendants deny all claims made by plaintiff, including that of infringement, and assert the invalidity of McCutchen's patent. They concede, however, that if any of the fourteen claims in McCutchen's patent is valid, the Form 1 machine infringes. Plaintiff's contention is that his invention is an improvement over the prior art and that heretofore separate machines were necessary to produce cut pile and uncut pile. Tufting is done by the use of converted sewing machines where the bobbin has been removed and a new shaft under the bedplate of the machine added to which is attached a hook or looper in place of the bobbin. An oscillating needle carries the yarn down through the fabric where it is held by the looper as the needle makes an upward stroke. Cut pile is the result of the clipping of the loops so produced and loop pile results from loops which are uncut. Plaintiff's invention by a separately mounted finger or pusher engages and removes loops upon the looper when uncut pile is desired and can be inactivated so as to permit the loops to reach the cutter and produce cut pile.

The issues in this case have been severely limited by the parties themselves by stipulation. They are whether defendant Singer's Form 1 machine infringes plaintiff's patent, which it is conceded will be true if any one of the fourteen claims of the McCutchen patent is valid; and whether defendant Singer's Form 2 machine infringes Claims 1, 2 and 3 of plaintiff's patent.

The district judge held that defendant Singer's Form 1 machine infringed plaintiff's patent but also found that Claims 1 and 10 of plaintiff's patent were invalid. However, the district judge held that there was no infringement of plaintiff's patent by defendant Singer's Form 2 machine.

## INVALIDITY OF McCUTCHEN'S PATENT

Defendants contend that all of the fourteen claims in plaintiff's patent are invalid. They state that the McCutchen patent is an obvious and anticipated combination of old elements and refer to the prior art patents of Gladish, No. 1,907,-292, dated May 2, 1933; Behrens, No. 2,513,261, dated June 27, 1950; and Hoeselbarth, No. 2,882,845, dated April 21, 1959, but application was filed on July 5, 1955, prior to McCutchen; and to the invention of George Dedmon, also said to be prior art, in support of their contention. Defendants maintain that all that McCutchen did was to take a conventional prior art cut pile tufting machine which he purchased from defendant Singer's predecessor and mount an attachment consisting of finger elements adjacent to the loopers to engage the loops on the loopers and push them off before they can be severed by the cutters. Defendants assert that machines for making both loop and cut pile fabric with the same needle during a single pass of the fabric are disclosed in the prior art patents of Gladish and Hoeselbarth; that the prior art Behrens patent discloses a finger element used to push loops off the looper in a tufting machine. Finally, defendants contend that a combination of all these so-called old elements is found in Dedmon's machine which they say is earlier than plaintiff's invention.

The trial judge did not agree with the several defense contentions. He concluded that Gladish (unlike McCutchen) used certain grouper arms in lieu of a finger, with the looper facing at an angle to the direction of movement of the fabric, and that the Gladish, Hoeselbarth and Behrens patents had never attained commercial success.

The district court held that plaintiff's device showed "inventive genius" in that "at all times the looper in question faces in a direction opposite to that from which the fabric is moving, and * * * pro-

vides for a 'finger' or 'pusher' which, when uncut loops are desired, will push the loops from the looper, preventing a cutting device from severing the loops." [3]

We are in agreement with the trial court's findings and conclusions in connection with the prior art. Gladish did not use the finger or pusher device invented by McCutchen and which we believe is an integral part of McCutchen's invention. Though Behrens' machine has a looper facing in the opposite direction of the fabric feed for cut pile, and the machine will produce both cut and uncut pile, in order to switch from one to the other the machine must be stopped and the looper in operation removed and replaced by the other. Thus Behrens neither anticipates nor renders obvious McCutchen's invention. McCutchen's patent is earlier than Hoeselbarth's, the McCutchen date being March 31, 1959 and Hoeselbarth's date being April 21, 1959. The two applications were, however, pending before the Patent Office at the same time. We will discuss Dedmon's device fully hereafter in this opinion.

No interference was suggested by the Patent Office as to any of the prior art patents and, accordingly, McCutchen's patent has presumptive validity under the statute. See Samuelson v. Bethlehem Steel Company, 5 Cir., 1963, 323 F.2d 944, 947, cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1954); Southern States Equip. Corp. v. USCO Power Equip. Corp., 5 Cir., 1953, 209 F. 2d 111, 118.

The defendants contend that eight of the designated claims of plaintiff, namely, Claims 1, 4, 6, 7, 8, 10, 11 and 12, are invalid for failure to include or distinctly recite elements essential to the alleged invention. Thus defendants contend that the McCutchen Patent Claim 1 does not include a cutter to cooperate with the looper for severing loops upon the looper; accordingly, that the machine is incapable of making cut pile and can only make loop pile, which claim is, therefore, in opposition to McCutchen's patent specifications that the object of the invention is a machine capable of producing both loop and cut pile.

The trial judge agreed with defendants and held Claim 1 invalid for failure to include a cutting device to operate upon the loops while on the looper, which device he found was essential to the operation. [4]

We concur with the trial judge's conclusion, for if the purpose of the invention was a machine capable of producing both cut and uncut pile in one pass through the machine, failure to include in Claim 1 a device for severing the loops while on the looper was a fundamental omission of an essential claim which cannot be supplied by implication and, therefore, rendered Claim 1 invalid. See Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005 (1935), and cases cited therein, as well as 35 U.S.C. § 101 defining a patentable invention [5] and 35 U.S.C. § 112 requiring that the claims particu-

3. The trial judge also said in his written opinion, "Prior to plaintiff's invention, in order to form on the fabric designs by use of alternating cut and uncut loops, it was necessary to use two different machines, in one of them all of the loops being cut and in the other, all of the loops being uncut, thereby necessitating that the fabric be run through each machine separately. A great saving in time and expense was therefore afforded by the McCutchen patent which required only one trip by the fabric over the throat plate.

"The McCutchen device employs a mechanism whereby the 'finger' or 'pusher' is activated or rendered inactive in order to give the design intended, but this device is not new."

4. The trial judge said in his opinion, "Plaintiff's Claim No. 1 (perhaps through inadvertence) does not include a cutting device to operate upon the loops while on the looper, though that device is essential to the operation and therefore, under cases cited by defense counsel, Claim No. 1 is invalid."

5. 35 U.S.C. § 101 provides:
"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

larly point out and distinctly claim the subject matter of the invention.[6]

Defendants assert that Claims 4, 6, 7, 8, 10, 11 and 12 of the McCutchen patent are invalid because they omit any reference to the direction in which the looper is to face in connection with the fabric feed. Plaintiff agrees with this contention in his reply brief and concedes the invalidity of these claims for that reason.[7]

Defendants rely most strongly on the Dedmon machine for invalidation of the McCutchen patent, averring that Dedmon antedates McCutchen's invention and is a prior invention which had not been abandoned, suppressed or concealed; that Dedmon's machine embodies all elements of the McCutchen machine and, therefore, is a true anticipation under the patent statute. See 35 U.S.C. §§ 102 (a) and 102(g).[8]

However, the district court found that though the record "is somewhat confused as to the relative dates on which the McCutchen and the Dedmon devices were actually reduced to practice," McCutchen's device predated Dedmon's, and the court further said that he was basing his finding "primarily upon the failure of defense counsel to be more specific as to certain dates, although evidence could have been obtained removing some of this uncertainty." [9]

---

6. 35 U.S.C. § 112 provides in pertinent part, as follows:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. * * *

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

7. Plaintiff's reply brief, p. 11:

"Plaintiff does not consider Claims 4, 6, 7, 8, 10, 11 and 12 essential to the protection of his invention, did not rely upon any of them in the court below, believes that defendants' attack on the particular ground recited is meritorious, and concedes their invalidity."

8. 35 U.S.C. § 102 provides in pertinent part, as follows:

"A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

\* \* \* \* \*

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

9. The trial judge set forth a number of specific findings in his opinion which read in pertinent part, as follows:

"The McCutchen device was made in early November, 1955 (Tr. 100), about two weeks before a certain letter was written on November 16, 1955 (Tr. 112, Ex. 6 and Ex. 7). It is true that in 1954 some device was conceived by Dedmon (Tr. 1262–1267). The Dedmon device in its final form, was not completed until some time after Dedmon was employed by Southern Machine Company at its plant at Ft. Oglethorpe, Georgia. Dedmon testifies he went with Southern in June, 1955 (Tr. 1310) and made his device with sixteen needles while there. It was a revised machine following others that he had made a considerable time before. Defendants' witness Gilbreath said Dedmon came to Southern in early 1955, and that his device was made in the spring of 1955. Dedmon indicates that in June, 1955 he built his device 'out wider' with sixteen needles (Tr.

The district court then held that Dedmon had concealed his invention and that the evidence showed a clear intent upon the part of Dedmon and his employer to keep it secret. A special room was specifically constructed from which others were excluded where work on the Dedmon device was going on. The room could not be entered without passing through an adjoining room occupied by other persons in the employ of the company and disclosure of the Dedmon device was limited and closely guarded. Thus, by virtue of these and other circumstances which he described, the court ruled that Dedmon concealed his device within the meaning of 35 U.S.C. § 102 (g), and it "cannot be considered as an anticipation to the McCutchen device under the facts of this case." [10]

■ In reviewing these findings, they should not be disturbed unless clearly erroneous, that is, unless we have a definite and firm conviction that a mistake has been made. See Rule 52(a), Fed.R.Civ. P.; McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774.

■ Whether Dedmon's machine was known by others in this country before McCutchen's, or whether McCutchen predated Dedmon, and whether Dedmon concealed his invention, were issues of fact submitted to the district court with numerous witnesses, exhibits, documents and depositions. The evidence was in sharp conflict. Defendants had the burden of proving beyond any reasonable

doubt that Dedmon was the first inventor of the device in question and that the patent was invalid. See Foster Cathead Co. v. Hasha, 5 Cir., 1967, 382 F.2d 761; Cameron Iron Works, Inc. v. Stekoll, 5 Cir., 1957, 242 F.2d 17. In view of the numerous witnesses who testified for each side, including the experts, and with the credibility choices which the district judge had to resolve on conflicting evidence, we are unable to say that the trial court's findings are clearly erroneous or that we are firmly convinced that a mistake has been made.

We hold, therefore, with the district judge that plaintiff's patent and the claims he has asserted therein are valid except for those heretofore conceded by plaintiff to be invalid and except Claim 1, which was found by the trial judge to be invalid and which finding we also affirm. Thus our holding of validity of plaintiff's patent necessarily requires a holding that defendant Singer's Form 1 machine infringes the McCutchen patent.

## INFRINGEMENT OF McCUTCHEN'S PATENT

The final question for decision is whether defendant Singer's Form 2 machine infringes McCutchen's patent and plaintiff has restricted his charge of infringement to Claims 1, 2 and 3 of his patent. Claims 1, 2 and 3 contain references to means to engage and remove certain other loops from the looper, and means (separate from the looper and cutter) for engaging and removing certain other loops from the looper—so the fabric base may contain areas of severed loops and areas of unsevered loops. Plaintiff urges that we give these claims the

1312). Patent attorney Rommel who prepared application for the Dedmon device did not receive the machine until September 19, 1955 (Tr. 513) and Mr. Gilbreath did not make sketches of the same until October 7, 1955."

10. We are referred in McCutchen's reply brief to the Patent Office file history of Dedmon's application in plaintiff's Exhibit QQ. This exhibit was not designated nor reproduced for the record by the parties and we do not have it before

us. Apparently it is undisputed, however, that Dedmon's patent application was filed on June 5, 1959, after McCutchen's patent applied for on January 25, 1956 was issued on March 31, 1959, and that the Patent Office Board of Appeals affirmed the Examiner's rejection of all of Dedmon's claims to priority over McCutchen. Defendants contend, however, that Dedmon's machine was actually in existence prior to McCutchen's earliest date.

broadest possible construction relative to the means to engage certain other loops upon the looper and to remove them from the looper; that the language of plaintiff's patent shows that the drawings and specifications were intended only as a preferred embodiment rather than the only possible embodiment of the invention. They cite Up-Right, Inc. v. Safway Products, Inc., 5 Cir., 1963, 315 F.2d 23, 27, where this court said that "we adhere to the established rule that the patent was not limited to the preferred embodiments shown in the claims or drawings." The trial court in finding no infringement of the McCutchen patent by the Singer Form 2 machine said that "the novel and critical feature" of the McCutchen machine "consists of a device known as a 'finger' or 'pusher' which removes the loops in the yarn from the looper from time to time as the fabric moves along, so as to alternate between cut and uncut loops on the finished product." The district court then referred to the Singer Form 2 machine which it found also removes the loops from the looper in order to have cut and uncut loops according to desired design, "but in doing so does not use a 'finger' or 'pusher', or any device which can be considered as an equivalent thereof." And the court said it was clear "that the means adopted in plaintiff's patent, of engaging and removing the loops upon the looper, are not equivalent to the means of doing the same thing contained in defendants' Form 2 machine (which consists of a device regulating the speed with which the yarn is fed into the final product)." Claims 1, 2 and 3 refer to means "to engage" other loops upon the looper and to remove them from the looper; also to means separate from the looper and cutter "for engaging" certain other loops upon the looper for removing them in order that there may be areas of severed loops and areas of unsevered loops on the fabric base. Defendants urge that the Singer Form 2 machine employs completely different means separately patented by defendant Singer for removing loops from the looper.

We agree with defendants that there is a substantial difference between the method which the McCutchen and Singer Form 2 machines use in removing loops from the looper so that they will not be severed by the cutter. McCutchen uses a finger or pusher which engages the loops and pushes them off. The Singer Form 2 machine has no such finger or pusher or other device to engage the loops on the looper, but uses an entirely different device on which Singer has a patent, with a mechanism consisting of two feed rolls, a yarn shifting finger, a pattern drum and a solenoid. By virtue of alternate knurled and smooth bands on the feed rolls arranged so that one roll travels at a higher speed than the other, the machine can be set so that it will produce cut or loop pile as desired. When the yarn is in contact with the fast feed roll, more yarn is fed to the tufting needle, thus forming loops which are cut in the normal cut pile operation since the loop stays on the looper and is cut as it enters the cutting areas at the rear of the looper. However, if the yarn is in contact with the slower roll, less yarn is fed to the tufting needle which must draw yarn from the previously formed loop, and the tension thus created causes the loop to slip off the point of the looper, and also causes the loop to be shorter, and hence it is not severed by the cutter. The cut pile is thus quite a bit longer than the looped pile.

The doctrine of equivalents which plaintiff urges in support of his claim of infringement is inapplicable because the two machines perform in entirely different ways and with entirely different mechanisms. The Patent Office must have agreed when it granted Singer a patent on its machine *after* the McCutchen patent. A patentee who has made only a narrow improvement is restricted to his own improvement and cannot prevent others from making improvements on the prior art if they do not use substantially the same method and novelty. Edwards v. Johnston Formation Testing Corporation, 5 Cir., 1932, 56 F.2d 49; Industrial Instrument Corporation

v. Foxboro Company, 5 Cir., 1962, 307 F.2d 783.

Defendant Singer's patent for its Form 2 machine does not have a means to engage and remove loops from the looper such as the finger or pusher in the McCutchen patent. The Singer Form 2 machine removes the loops in a completely different manner as a result of the use of a mechanism which provides tension on the yarn itself, causing it to be removed from the looper when uncut pile is desired. Plaintiff erroneously wishes us to hold, in effect, that his patent includes every means for removing loops from the looper in a machine in which the looper is placed opposite the direction of the fabric feed. However, for the accused Singer Form 2 machine to infringe it must perform the same function in substantially the same way to obtain substantially the same result. Up-Right, Inc. v. Safway Products, Inc., 5 Cir., 1953, 315 F.2d 23, 27. As we have already indicated, the methods of the two machines are substantially different.

The Singer Form 2 machine has apparently solved what was a fundamental defect in the McCutchen machine, that is, the problem of re-engagement of loops which had been pushed from the looper by the finger or pusher. Since the Singer Form 2 machine uses no such device but depends on the tension of the yarn strand itself, and since in the unsevered loop operation the loops are somewhat shorter, there is no problem of re-engagement of the loops on the looper.

We are firmly convinced, therefore, that there is no infringement by the Singer Form 2 machine. The claims asserted by plaintiff are much too broad and not justified by the evidence. As the Supreme Court said in Boyden Power-Brake Co. v. Westinghouse, 170 U.S. 537, 18 S.Ct. 707, 723, 42 L.Ed. 1136 (1898), "the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine

cannot be patented is of no practical value." [11] The similarity of result accomplished by the McCutchen and Singer Form 2 machines is not sufficient to establish infringement for there must be a real identity of means, operation, and result for McCutchen to prevail. See Foster Cathead Co. v. Hasha, 5 Cir., 1967, 382 F.2d 761.

Affirmed.

---

11. See also Union Paper Bag Mach. Co. v. Advance Bag Co., 6 Cir., 1912, 194 F. 126.