The GILLETTE CO., Plaintiff,

v.

**WARNER–LAMBERT CO., Defendant.**

**Civ. A. No. 87–1567–C.**

United States District Court,
D. Massachusetts.

July 26, 1988.

---

**116**

Robert W. Furlong, Gregory A. Madera, Fish & Richardson, Boston, Mass., for plaintiff.

Robert S. Frank, Choate Hall & Stewart, Boston, Mass., Paul H. Kochanski, Lerner, David, Littenberg, Krumholz and Mentlik, Westfield, N.J., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

The plaintiff filed this suit seeking a declaratory judgment as to whether it is infringing a patent held by the defendant. This court has jurisdiction under 28 U.S.C. §§ 1338, 2201. The matter is now before the court on the plaintiff's motion for summary judgment. For the reasons set out below, the plaintiff's motion is denied.

The plaintiff, Gillette, manufactures and markets razors and razor cartridges under the names "Atra Plus" and "Good News! Plus." The defendant owns the patent on razors marketed under the name of "Schick Super II Plus" and "Schick Plus". The defendant claims this patent is being infringed upon by the Atra Plus and the Good News! Plus. The Atra Plus and the Good News Plus razors both have a narrow plastic strip attached to the cap of the razor just above, and parallel to, the blades.[1] This strip is composed of water-insoluble polystyrene impregnated with water-soluble polyethylene oxide. The defendant's patent describes a similar razor, that is, a bonded cartridge razor having a plastic strip of similar material attached to the cap.

The plaintiff, however, challenges the validity of claims 1, 2, 3, 4, and 11 of the defendant's patent (the "Booth Patent"). Specifically, the plaintiff asserts that claims 1–4 of the Booth Patent are invalid under 35 U.S.C. § 102(a),[2] on the grounds that the Booth Patent was anticipated by a prior British patent (the "Calmic Patent"). The plaintiff further argues that claim 11 of the Booth Patent is invalid under 35 U.S.C. § 103 on the grounds that the razor described in claim 11 was obvious to one skilled in the art.[3]

In arguing that the Booth patent has been anticipated, the plaintiff bears a particularly heavy burden. To begin with, summary judgment is usually inappropriate in patent infringement cases, which are usually dominated by factual issues. *Continuous Curve Contact Lenses v. Rynco Scientific*, 680 F.2d 605, 606 (9th Cir.1982). This is especially true when the issue of anticipation has been raised, since anticipation is a factual issue. *Id.; American Seating Co. v. National Seating Co.*, 586 F.2d 611, 618 (6th Cir.1978), *cert. denied* 441 U.S. 907, 99 S.Ct. 1999, 60 L.Ed.2d 377

1. The plaintiff has named this strip the "Lubra–Smooth" strip.

2. That section reads:
   A person shall be entitled to a patent unless: (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent. . . .

3. Section 103 provides:
   A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

(1979). *See Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609–10, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950) (noting that the issue of equivalence of two inventions is a factual one). Moreover, an issued patent is presumed valid. 35 U.S.C. § 282. As such, in challenging the validity of a patent, the plaintiff bears the heavy burden of showing by clear and convincing proof that the patent is invalid. *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve Inc.*, 796 F.2d 443, 446 (Fed.Cir. 1986), *cert. denied* —— U.S. ——, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987); *Paeco, Inc. v. Applied Moldings, Inc.*, 562 F2d 870, 875 (3d Cir.1977).

■ Under § 102(a), a device is anticipated if all of the claimed elements, or their equivalents, of the patented device are found in a previously patented or constructed device that is capable of performing the same functions as the patented device. *Shanklin Corp. v. Springfield Photo Mount Co.*, 521 F.2d 609, 616 (1st Cir.1975), *cert. denied* 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976); *Marasco v. Compo Shoe Machinery Corp.*, 325 F.2d 695, (1st Cir.1963), *cert. denied* 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216 (1964); *Continental Oil Co. v. Cole*, 634 F.2d 188, 195 (5th Cir.1981), *cert. denied* 454 U.S. 830, 102 S.Ct. 124, 70 L.Ed.2d 106. Not only must all claimed elements be present in the prior device, but the elements must be found in substantially the same situation where they do substantially the same work. *Continental Oil*, 634 F.2d at 195.

■ The principle question here is whether the plastic strip described in the Booth Patent claims 1–4 is the equivalent of the sponge that is described in the Calmic patent. The Booth patent describes a modification of an ordinary bonded cartridge razor. The modification consists of an "integral solid shaving aid, said shaving aid being permanently and substantially immovably affixed to said cartridge and being water soluble." As defined in the patent, the term "shaving aid" refers to either "the save-aiding agent combined with a solid, water-soluble micro-encapsulating or micro-porous structure which re-

tains the agent or to that agent itself being a water-soluble solid" The agents envisioned are such substances as lubricating agents, cleaning agents, depilatory agents, medicinal agents, or cosmetic agents. Upon wetting, these agents are applied to the skin as the razor cutting edge is moved over the skin.

The Calmic patent describes a safety razor that has a synthetic sponge applicator covering between 30% and 80% of the razor's cap. The sponge applicator is impregnated with a variety of substances, including antiseptics, cosmetics, shaving soaps, and depilatory agents. In use, the applicator is rubbed across the skin to apply the desired agent. The razor is then held at an angle to the skin so that the cutting edge is in contact with the skin. The patent stresses that the applicator and the blade are not in contact with the skin simultaneously. Also, the Calmic reference makes no reference to the concept of microencapsulation, on which the Booth patent relies heavily.

On these facts, a fact-finder could find the plaintiff has failed to show by clear and convincing evidence that the shaving aid described in the Booth patent claims 1–4 are equivalent to the sponge applicator described in the Calmic patent. As described, the strip of material in the Booth Patent is made of different material than the strip in the Calmic Patent. Moreover, the strips are positioned differently in relation to the blade, and function in slightly different manners. While it is true that the purposes of the inventions are similar, one cannot say as a matter of law, that these two devices are identical. The question of the equivalence of these two elements is in dispute, thus precluding summary judgment. Therefore, the plaintiff's motion for summary judgment on the validity of the Booth patent claims 1–4 should be denied.

The plaintiff also urges that claim 11 of the Booth patent was "obvious at the time the invention was made to a person having ordinary skill in the art." As the United States Supreme Court noted, the question of obviousness is based on factual inquiries such as the scope of the prior art, the differences between the prior art and the

patent at issue, and the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). In addition, the fact-finder may also consider the circumstances surrounding the origin of the subject matter sought to be patented, as evidenced by factors such as commercial success, long felt but unsolved needs, and failure of others. *Id.* at 17–18, 86 S.Ct. at 693–94. The Court of Appeals for the First Circuit has stated that the determination of obviousness is essentially one of fact. *International Telephone & Telegraph Corp. v. Raychem Corp.,* 538 F.2d 453, 456 (1st Cir.1976), *cert. denied* 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167.

To support its argument, the plaintiff points to the Calmic patent noted above, and a United States patent referred to as the Jennings '951 patent ("the Jennings patent"). The Jennings patent describes the use of a polyethylene oxide stick as a pre-shave lubricant to be used instead of lather. Based on these two patents, the plaintiff argues, it would be obvious to one with ordinary skill in the art to devise the razor described in claim 11 of the Booth patent.

The plaintiff is correct in asserting that there is no dispute concerning the scope and content of the prior art. The plaintiff is incorrect, however, in asserting that there is no dispute as to the level of ordinary skill in the art, or the obviousness of the Booth patent. The defendant's expert, a chemist employed by Schick, states that it would not have been obvious to combine the Calmic patent and the Jennings patent. The position and the method of using the Calmic patent's sponge is markedly different from the that of plastic strip in the Booth patent. The defendant's expert also notes that the use of polyethylene oxide as a shave-aiding lubricant was known even before the Calmic patent was issued. The fact that no one combined the polyethylene oxide technology with the Calmic patent prior to the Booth patent supports the inference that the Booth patent was not obvious to those skilled in the art. Finally, the plaintiff itself, in its Quarterly Report, touted their polystyrene/polyethylene ox-

ide strip as "the first significant technological shaving advance since the 1977 introduction of the Atra pivoting head razor." While this may be just puffery, as the plaintiff claims, it further supports the inference that the plastic strip in dispute was not obvious in 1979 to those skilled in art.

Whether it would be obvious to one skilled in the art of shaving aids to replace the sponge with the polyethylene oxide is therefore a disputed question of fact that precludes summary judgment. Accordingly, the plaintiff's motion for summary judgment should be denied.

Order accordingly.