**FARMHAND, INC. and Reynolds Module Systems, Inc., Plaintiffs-Appellees,**

v.

**ANEL ENGINEERING INDUSTRIES, INC., Defendant-Appellant.**

**FARMHAND, INC. and Reynolds Module Systems, Inc., Plaintiffs-Appellants,**

v.

**ANEL ENGINEERING INDUSTRIES, INC., Defendant-Appellee.**

Nos. 81–1157, 81–1384.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1982.

Rehearing Denied Feb. 4, 1983.

Carr, Evans, Fouts & Hunt, M. Warlick Carr, Lubbock, Tex., Merchant, Gould, Smith, Edell, Welter & Schmidt, John D. Gould, Douglas A. Strawbridge, Minneapolis, Minn., for Farmhand, Inc.

Walker & McKenzie, John R. Walker, III, Memphis, Tenn., Crenshaw, Dupree & Milam, Tom S. Milam, Joe H. Nagy, Lubbock, Tex., for Anel Engineering.

Before BROWN, GOLDBERG and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

This patent dispute, one of the final patent cases to be considered by this court, involves a device for transporting large, compacted haystacks and cotton modules. Returning special verdicts, the jury found the patent to be valid and infringed, and determined the factual basis for damages. The district court entered judgment assessing damages and enjoining defendant Anel. Anel appealed (our docket number 81–1157), posting a supersedeas bond for the money damages. After this appeal was noticed, plaintiffs charged Anel with violations of the injunction. The district judge refused to adjudge Anel guilty of contempt. Plaintiffs appealed this decision (our docket number 81–1384), and the two appeals were consolidated. Finding no error in either case, we affirm the district court.

### Facts

This case involves a truly intriguing device which reconfirms the accuracy of the adage that necessity is the mother of invention. The device at issue is commonly called a "chain-type" or "chain-beam" haystack mover. The haystacks involved are not the wigwam-shaped piles brought to mind by references to Little Boy Blue or to searching-for-a-needle-in, but are large, tightly packed bales measuring 15 by 24 feet and weighing up to 10 tons. The chain-type mover has been adapted to handle the cotton module, a recently developed cotton bale similar to the haystack but heavier.

The device, mounted on a trailer or truck, is designed to load, transport, and unload the enormous bundles of hay or cotton, using only one operator, who need not exit the cab during the procedure. The driver merely backs the equipment to the load, lowers the rear end of the bed to ground level, engages the drive which operates a chain located in the center of the bed and the drive which moves the vehicle, and sits back and watches. The two drive means are synchronized so that they operate in opposite directions simultaneously and uniformly; as the truck moves backward the chain moves forward. Within moments, without any forward or backward motion of the load but only an upward tilt, the trailer

is positioned entirely under the load. The chain drive is stopped and the bed is returned to the transport position. The vehicle is then driven to the new location, where the procedure is reversed and the load is placed on the ground. For all practical purposes, the trailer is driven under the load as it is lifted and is driven out from under the load as it is lowered.

Before the advent of the chain-type mover, haystacks were moved in a slow, cumbersome, dangerous and difficult fashion by a mechanism using a winch, cable and sling. One person alone could not perform that operation. The chain-type mover received wide and rapid acceptance, replacing its predecessor. Quicker, easier, safer and cheaper to operate, the device revolutionized the movement of haystacks.

Farmhand, Inc. holds the rights to the chain-type mover under U.S. Patent No. 3,298,550 (the '550 patent); Reynolds Module Systems, Inc. is a licensee. Reynolds adapted the device, in order to move cotton modules, by adding attachments, strengthening the mechanism, and increasing its capacity. Anel Engineering Industries, Inc. began building chain-type cotton movers in truck and trailer models in 1977. Anel did not seek authorization from the '550 patent-holder, and the instant suit followed.

Boyd Schiltz, a South Dakota farmer and haystack mover, applied for the '550 patent on April 6, 1964; it was issued on January 17, 1967. Boyd's brother Bruce, recipient of U.S. Patent No. 3,209,932 (the '932 patent), claims to be the inventor of the chain-type mover. The '932 patent reads on claim 10 of the '550 patent.

Bruce Schiltz applied for the '932 patent on October 22, 1963. Eleven days before, on October 11, 1963, Boyd Schiltz assigned his '550 patent interests to Farmhand. Bruce Schiltz was present during the assignment.

When considering the validity of the '550 patent, the jury was confronted with the adverse claims of inventorship. Conflicting evidence was presented, including evidence that Boyd Schiltz had reduced his invention to practice before Bruce Schiltz filed his application.

*Validity*

Anel contends that the jury's finding that the '550 patent was valid was based on erroneous instructions and directions, primarily as relates to the issues of inventorship and novelty.[1]

Instructions are considered adequate if the jury is given an appropriate understanding of the controlling law and of its role in the decision-making process:

> In the review of jury instructions, a challenged instruction should not be considered in isolation but rather as part of an integrated whole. If, viewed in that light, the jury instructions are comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate.

*Scheib v. Williams-McWilliams Co., Inc.,* 628 F.2d 509, 511 (5th Cir.1980) (*citing Vezina v. Theriot Marine Service, Inc.,* 554 F.2d 654 (5th Cir.1977)). The instructions challenged in the instant case must be reviewed in light of the total charge and the trial setting.

Anel argues that the trial judge's instructions and interrogatories incorrectly placed on it the burden of proof on the question of inventorship. If Bruce Schiltz invented the chain-type mover first, then the '932 patent is anticipatory prior art under 35 U.S.C. § 103,[2] obviously affecting the validity of the '550 patent.

---

**1.** Anel also assigns error to the wording and timing of portions of the jury charge. We do not find the language used, in context, to be incorrect, misleading or prejudicial. "A party is not entitled to have the jury instructed in the particular language of its choice." *Baker & Co., Fla. v. Preferred Risk Mut. Ins. Co.,* 569 F.2d 1347, 1350 (5th Cir.1978). The language

and timing of these portions, considered as part of the entire charge, were not likely to mislead the jury or prejudice Anel.

**2.** Section 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title,

### Presumption of Validity

The '550 patent, like every patent properly issued, carries with it a presumption of validity. The burden of showing the invalidity of a patent therefore rests upon the challenging party. 35 U.S.C. § 282. "The burden on one who would invalidate a patent is a heavy one." *Ludlow Corp. v. Textile Rubber & Chemical Co., Inc.,* 636 F.2d 1057, 1059 (5th Cir.1981).[3]

■ The impact of the presumption is measurably weakened when it is shown that the Patent Office, in making its decision on issuance, did not consider pertinent prior art. *Cathodic Protection Service v. American Smelting & Refining Co.,* 594 F.2d 499 (5th Cir.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 378 (1979); *Parker v. Motorola, Inc.,* 524 F.2d 518 (5th Cir.1975), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976). The trial judge correctly declined an instruction diluting the presumption of validity of the '550 patent. The Patent Office, in approving the '550 patent, had considered the controversy between the Schiltz brothers and the prior art nature of the '932 patent.[4]

The presumption in favor of the '550 patent is further supported by prior adjudications and consent decrees testing and af-

---

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The invention is completed when it is "reduced to practice." A patent application constitutes a "constructive reduction to practice" which can, of course, be challenged by an actual reduction. *See Kardulas v. Florida Machine Products Co.,* 438 F.2d 1118, 1120 (5th Cir. 1971).

In the instant case, the jury found that Boyd Schiltz reduced his invention to practice prior to his brother's filing date. Since that finding is amply supported by the record, the principal question we face as to inventorship is whether the trial court correctly placed the burden on Anel to show that Boyd Schiltz was not the inventor.

3. The quantum of proof for this "heavy" burden has not been settled, but it has been described as something more than a "mere preponderance of the evidence." *Parker v. Motorola, Inc.,* 524 F.2d 518, 521 (5th Cir.1975), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976). The district judge in the instant case adequately identified and explained the various standards to the jury. As the Supreme Court observed nearly a half century ago:

The context suggests that in these and like phrases the courts were not defining a standard in terms of scientific accuracy or literal precision, but were offering counsel and suggestion to guide the course of judgment. Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance.

*Radio Corporation of America v. Radio Engineering Laboratories, Inc.,* 293 U.S. 1, 8, 54 S.Ct. 752, 755, 78 L.Ed. 1453 (1934).

4. Anel incorrectly reads our opinion in *Kardulas v. Florida Machine Products Co.,* 438 F.2d 1118 (5th Cir.1971), as requiring that the burden shift when a prior filing date is established. *Kardulas* is consistent with the ordinary presumption of validity. In that case the prior filing date weakened the presumption that the Patent Office properly considered the relevant prior art. "Kardulas was shouldered with the burden of carrying her invention date back beyond Snow's [earlier] application date." *Id.* at 1121. That "burden" was on Kardulas in her application process before the Patent Office. At trial, a reduction to practice must be shown to antedate a prior filing as an element of the requirement of novelty, but no burden shifts and the statutory presumption of validity continues to attach. *Kardulas* develops this presumption and its dilution when the Patent Office has not considered prior art. In the instant case the Patent Office was fully aware of Bruce's prior filing. At trial, the presumption of validity applied. *See Solder Removal Co. v. International Trade Comm'n,* 582 F.2d 628 (C.C.P.A.1978) (presumption weakened if prior art not considered, but burden at trial still falls on party challenging validity).

*Kardulas* also refers to the type of evidence which can be used to establish invention date, 438 F.2d at 1121. The jury in the case *sub judice* was informed properly of its duty in this regard, and there is sufficient evidence in the record for the jury to find that plaintiffs' evidence was corroborated and documented and Boyd Schiltz reduced to practice his invention prior to his brother's filing date.

firming its validity.[5] *See American Home Products Corp. v. Lockwood Manufacturing Co.,* 483 F.2d 1120 (6th Cir.1973) (another circuit's finding of validity against different infringer enhances presumption); *Robertson Rock Bit Co. v. Hughes Tool Co.,* 176 F.2d 783 (5th Cir.1949) (another circuit's finding of validity deserves "comity," especially when patent has withstood lengthy challenges and infringers are shown to have deliberately copied), *cert. denied,* 338 U.S. 948, 70 S.Ct. 487, 94 L.Ed. 585 (1950).

■ At trial, evidence of the prior cases upholding the validity of '550 was offered as a factor for the jury's consideration in determining patent validity. Such evidence, like the factor of commercial success, was not dispositive, as such, but was relevant. Allowing the jury to consider this evidence was not error. *See Illinois Tool Works, Inc. v. Foster Grant Co.,* 547 F.2d 1300 (7th Cir.1976) (same court, different infringer); *Columbia Broadcasting System, Inc. v. Zenith Radio Corp.,* 391 F.Supp. 780 (N.D.Ill.1975), (different court, different infringer), *rev'd on other grounds,* 537 F.2d 896 (7th Cir.1975).[6]

■ The district judge properly cited the presumption of validity of the challenged '550 patent in placing the burden on Anel. The instructions, considered "as part of an integrated whole," were "comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury" and therefore pass appellate scrutiny.

■ Likewise, the judge's instruction placing upon Anel the burden of showing that the '550 patent, as a combination patent, does not produce a synergistic result is not error. While *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976), set out the standards by which a combination patent is to be judged, it did not remove the statutory presumption of validity from combination patents. *See* 35 U.S.C. § 282. Assignment to Anel of the burden on this element cannot be said to conflict with the requirements of *Sakraida.*

■ Nor is the '550 patent invalid as a matter of law because its elements can be found in the prior art. In reviewing a combination patent, the essential inquiry is whether there is "an unexpected, unusual or synergistic result." *Huron Machine Products, Inc. v. A. & E. Warbern, Inc.,* 615 F.2d 222, 224 (5th Cir.1980). *See Whitley v. Road Corp.,* 624 F.2d 698, 701 (5th Cir.1980) ("Simply stated, in this instance the whole is no greater than the sum of its parts."). In the instant case, we are persuaded that

**5.** In *Farmhand, Inc. v. Lahman Manufacturing Co.,* 192 U.S.P.Q. 749 (D.S.D.1976), *aff'd,* 568 F.2d 112 (8th Cir.), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), the district court, in a detailed opinion considering prior art, held that the '550 patent was valid and infringed. In an earlier case, *Farmhand, Inc. v. Craven,* 455 F.2d 609 (8th Cir.1972), the defendant had conceded validity. In addition, at least four consent decrees have approved the '550 patent: *Farmhand, Inc. v. Rust Machine and Manufacturing, Inc.,* No. A1–74–78 (D.N.D., decree entered June 14, 1976); *Farmhand, Inc. v. Cotton Machinery Co.,* No. CA–5–77–124 (N.D.Tex., decree entered June 26, 1979); *Farmhand, Inc. v. Sand Gin Co.,* No. CA–5–77–58 (N.D.Tex., decree entered November 26, 1979); *Farmhand, Inc. v. Haybuster Manufacturing, Inc.,* No. A3–80–38 (D.N.D., decree entered June 5, 1980).

**6.** Although a previous determination of validity is one factor which a court or jury may consider in deciding whether a patent is valid, no collateral estoppel, or issue preclusion, question is raised. We have held that a prior finding of validity involving a different party and different prior art "is not binding on either principles of res judicata or estoppel by judgment." *Johns-Manville Corp. v. Cement Asbestos Products Co.,* 428 F.2d 1381, 1382 (5th Cir.1970). While the Supreme Court in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), extended estoppel to parties not involved in the prior suit, the Court limited the exception to a prior finding of *invalidity.* Thus a different defendant in a subsequent infringement action may raise anew the defense of invalidity, not bound by collateral estoppel to a previous finding of validity. *See Blumcraft of Pittsburgh v. Kawneer Company, Inc.,* 482 F.2d 542, 546 n. 9 (5th Cir.1973) ("The estoppel sanctioned by *Blonder-Tongue* operates only *against* a plaintiff and does not apply to prior findings of validity.") (emphasis in original); *Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Products, Inc.,* 418 F.Supp. 224, 226 (D.Colo.1976) (*citing Johns-Manville, supra*), *aff'd,* 597 F.2d 201 (10th Cir.1979).

ample evidence supports the jury's finding that the practical effect of the chain-type haystack mover constitutes a gestalt, producing a novel and nonobvious combination result. We affirm the finding that the '550 patent is valid.

## Infringement

Anel argues that its machines, intended to transport cotton modules, cannot infringe the '550 patent, since that patent describes a machine for moving "hay" and "haystacks." We are not convinced.

The claims of the patented invention are paramount. Thus "we must first turn to the claims of the patent because the scope of every patent is limited to the invention described in its claims, read in the light of the specifications." *Ziegler v. Phillips Petroleum Co.,* 483 F.2d 858, 868 (5th Cir.), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973). However, an inventor is not limited to the literal scope of his claims in every respect; as Judge Learned Hand once suggested: "[H]e is not charged with a prophetic understanding of the entire field of [the invention's] usefulness." *B. G. Corp. v. Walter Kidde & Co.,* 79 F.2d 20, 22 (2d Cir.1935). Exceptions to patent limitations have developed, including the concept of pioneer patents and the doctrine of equivalents.[7]

■ The district judge properly instructed the jury on the question of infringement, including file wrapper estoppel and the doctrine of equivalents. The jury reasonably could have concluded that the '550 patent should be defined by its unique operation rather than by the specific load or product upon which it was originally designed to operate, especially since use of the cotton module did not develop until several years later. The finding that the '550 patent is infringed by Anel's machines was based on a proper understanding of a patent's reach and limitations.[8]

## Motion for Contempt

When the district court issued its permanent injunction,[9] Anel had fifteen infringing machines. Anel subsequently purchased Craven Welding Company, thereby acquiring the license to sell chain-type movers which Craven had purchased from Farmhand. After Anel attempted to sell and in fact sold some of its machines, Farmhand and Reynolds sought a contempt citation. The motion was denied by the district judge.

■ Generally, when an appeal is noticed the district court is divested of jurisdiction; the matter is transferred immediately to the appellate court. The rule, however, is not absolute. The district court maintains jurisdiction as to matters not involved in the appeal, such as the merits of an action when appeal from a preliminary injunction is taken, *see Ex parte National Enameling & Stamping Co.,* 201 U.S. 156, 26 S.Ct. 404, 50 L.Ed. 707 (1906), or in aid of the appeal, as by making clerical corrections. *See* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3949, at 359 (1977). The district court maintains jurisdiction for other matters,

---

7. As we recently stated in *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1340–41 (5th Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980):

Construing the reach of a patent of this nature is not easy, particularly for non-scientist judges. We must balance the protection to be given the inventor against the need for creativity by others working in the field. We recognize that pioneering patents deserve broad protection, and we likewise note that a patent need not list every imaginable permutation of its components nor need it anticipate every possible modification developed by those who use it.

8. Anel further contends that the trial judge improperly allowed the jury to determine money damages. Anel presented evidence on the issue and had an opportunity for rebuttal of plaintiffs' claims; Anel has not shown that it was prejudiced by the manner in which the district court conducted the bifurcated proceedings.

9. By the terms of the district judge's order, Anel was enjoined for the remaining life of the '550 patent from "making, using or selling" its module movers or other infringing products "unless the Defendant has a valid license to make, use, and sell same."

such as ordering stays or modifying injunctive relief.[10] The Ninth Circuit in *Hoffman v. Beer Drivers & Salesmen's Local,* 536 F.2d 1268, 1276 (9th Cir.1976), upheld the district court's "continuing duty to maintain a status quo" in recognizing the jurisdiction of the trial court to issue further contempt orders while an appeal from the first contempt order was pending.

We have recognized the continuing jurisdiction of the district court in support of its judgment, as long as that judgment has not been superseded. In *Brown v. Braddick,* 595 F.2d 961 (5th Cir.1979), a patent interference action, the district court held contempt hearings on violations of its discovery orders. Jurisdiction was sustained:

> Since Braddick failed to ask the district court for a stay pending appeal and to post supersedeas bond as required by F.R. C.P. 62(d), the district court retained power to enforce its order by civil contempt proceedings. *See Sekaquaptewa v. MacDonald,* 544 F.2d 396, 406 (CA 9, 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977).

*Id.* at 965. The *Brown* court distinguished *United States v. Roundtree,* 420 F.2d 845 (5th Cir.1969), as involving criminal contempt proceedings.

 Anel did not seek a stay of the injunction nor post a supersedeas bond relative thereto.[11] The district court, accordingly, maintained jurisdiction to supervise its injunction—to execute its unsuperseded judgment—and properly entertained the motion for contempt. *See Sirloin Room, Inc. v. American Employers Insurance Co.,* 360 F.2d 160 (5th Cir.1966) (order to enforce unsuperseded money judgment may be entered by district court even after appeal noticed); *International Paper Co. v. Whitson,* 595 F.2d 559 (10th Cir.1979) (same).

In reviewing the propriety of the district court's substantive decision on the contempt issue, we find that the record supports the determination that Anel did not violate the injunction. Farmhand and Reynolds would have an indelible taint apply to all machines manufactured by Anel before it acquired a valid license. The district court did not interpret its injunction to apply in that fashion nor do we. "We see no basis for substituting our judgment for that of the district judge in interpreting his own order." *Securities & Exchange Comm'n v. Sloan,* 535 F.2d 679, 681 (2d Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

The judgment of the district court is, in all respects, AFFIRMED.

---

**10.** Rule 8(a), F.R.A.P., provides in part:

> Application for a stay of the judgment or order of a district court pending appeal, or for approval of a supersedeas bond, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the district court.

*See also* Fed.R.Civ.P. 62(c).

**11.** The record shows that Anel took such action on the money damages portion of the judgment but excluded the injunction from its bond and request for stay.