CONTINENTAL CONVEYOR & EQUIPMENT CO., INC., Plaintiff-Appellant,

v.

PRATHER SHEET METAL WORKS, INC., and Readi-Co. Manufacturing Inc., Defendants-Appellees.

CONTINENTAL CONVEYOR & EQUIPMENT CO., INC., Plaintiff-Appellant,

v.

LUMMUS INDUSTRIES, INC., Defendant-Appellee.

No. 82–1149.

United States Court of Appeals, Fifth Circuit.

July 14, 1983.

---

Arnold, White & Durkee, Kenneth E. Kuffner, James J. Elacqua, Houston, Tex., for plaintiff-appellant.

Richards, Harris & Medlock, V. Bryan Medlock, Jr., Daniel V. Thompson, Dallas, Tex., for Prather, et al.

Before POLITZ and JOLLY, Circuit Judges, and HUNTER,[*] District Judge.

POLITZ, Circuit Judge:

Persons engaged in cotton agribusiness routinely face many difficulties and challenges, some natural, others man-made. Today we consider a patent dispute involving machines which decompact cotton modules and feed them into the cotton gin. The jury found that the feeder built and marketed by the defendants, Prather Sheet Metal Works, Inc., Readi-Co. Manufacturing, Inc., and Lummus Industries, Inc., did not infringe the patent of Continental Conveyor & Equipment Company, Inc. Continental appeals, contending that the court erred in referring the construction of the patent claim to the jury. Finding no reversible error, we affirm.

### Facts

In times past, cotton was picked and hauled loose to the cotton gin in open trailers. In 1970 the cotton module was introduced to the industry by Texas A & M University and Cotton Incorporated, a New York research company. Modules are tightly-packed rectangular bales, typically measuring $20' \times 8' \times 8'$, and weighing 25,000 pounds. They are generally moved by specially designed vehicles.[1]

At the cotton gin the baling process is reversed. By "dispersing" the module the packed cotton is returned to the loose-seed state fit for ginning. The early machines which performed this function used a stationary or fixed "breaker head" working over a module advanced by conveyor.

In 1975 gin operator John E. McClesky, together with Charles V. Brown and Jose and Pedro Condarco, developed a feeder which employed a movable head working on a fixed module. Cotton was collected as it was dispersed by a back-up door structure. The movable-head design proved more economical and efficient than the fixed-head model, and the back-up member eliminated or reduced difficulties with remnants. This feeder was assigned U.S. Patent No. 4,109,-875 ('875 patent), and eventually became the property of Continental. Success of the movable-head model is best demonstrated by the fact that movable-head feeders outsell fixed-head feeders by more than eight to one.

At the time of trial of this cause, two movable-head feeders were available—Continental's "Feed-A-Matic," using the '875 patent, and a machine known as the "Readi-Feeder," developed in the late 1970s by

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

1. See *Farmhand, Inc. v. Anel Engineering Industries, Inc.*, 693 F.2d 1140 (5th Cir.1982).

Jimmy F. Prather. As conceded at trial, Prather's first generation model infringed the '875 patent which was then pending.[2] After '875 issued, Prather continued his efforts at redesigning and ultimately produced a movable-head feeder with a side double-door structure. His subsequent Readi-Feeder model was patented in 1980 as U.S. Patent No. 4,214,347 ('347 patent). The '347 application cited the '875 patent as prior art.

Continental charged that the Prather model infringed Claim 1 of the '875 patent. Defendants conceded validity of the '875 patent but denied infringement, a position accepted by the jury. Stripped to its essentials the dispute involves a comparison of the back-up member door structures on the competing feeders.

### Jury Instruction

Continental contends that the jury's finding of noninfringement was made in a vacuum, because the court did not construe for the jury the pertinent claim of the '875 patent. Because the construction of a patent claim is a question of law, *see Continental Oil Co. v. Cole,* 634 F.2d 188 (5th Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 124, 70 L.Ed.2d 106 (1981); *Weidman Metal Masters Co., Inc. v. Glass Masters Co., Inc.,* 623 F.2d 1024 (5th Cir.1980), *cert. denied,* 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 817 (1981), Continental argues that a jury cannot properly consider an infringement issue involving claim construction absent the court's specific interpretation of the patent. The contested claim refers to a "back up member normally carried by said top member in position to clear said module." The specific phrase at issue is "carried by said top member."

The cited cases do not support the broad proposition that jurors judging infringement—a recognized question of fact, *see, Ziegler v. Phillips Petroleum Co.,* 483 F.2d 858 (5th Cir.), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973)—cannot consider a claim's meaning in making their

determination. *Continental Oil Co., Weidman,* and *Zeigler,* involved bench trials in which a proper infringement inquiry required claim construction. In each case we noted that freer appellate scrutiny of the judge's findings is appropriate where the infringement issue required claim construction, so that "appellate courts are not bound by the strictures of Rule 52(a) when the District Court erred in construing the patent in question." *Ziegler,* 483 F.2d at 867.

■ In reviewing jury verdicts, the trial court may decide the question of infringement as one of law where that question turns entirely on construction of a claim, in an instance where a specific interpretation is compelled and that interpretation is controlling as a matter of law. *See Ebeling v. Pak-Mor Manufacturing Co.,* 683 F.2d 909 (5th Cir.1982). But the separation of the duties of judge and jury is frequently less than precise. In a patent infringement action involving the meaning of "individual passageway grooves" on a fluid control valve, we noted that the claim must be construed within the limitations reflected by that phrase. Thereafter,

> the question remains as to the proper meaning and significance of the phrase. That is a factual issue to be determined by the jury with reference to the specifications in the patent, the disclosures of the prior art, and the testimony of experts.

*Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 770 (5th Cir.) (citations omitted), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980). *See Farmhand, Inc. v. Anel Engineering Industries, Inc.,* 693 F.2d 1140, 1145 (5th Cir.1982) (jury was properly instructed on infringement and related doctrines, and "reasonably could have concluded that the ... patent should be defined by its unique operation" rather than by the load specified in the claims); *Tights, Inc. v. Acme-McCrary Corp.,* 541 F.2d 1047, 1060 (4th Cir.1976) (In determining obviousness, "formulation of issues is a

---

2. An infringement controversy involving four such feeders, sold after the issuance in 1978 of the '875 patent, was settled. Prather's early model is not involved in this appeal.

matter resting in the sound discretion of the trial judge," so that "if an issue presents a mixed question of fact and law, it may be submitted if the jury is instructed as to the legal standard to be applied."), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50. L.Ed.2d 589 (1976). *Cf. Baumstimler v. Rankin,* 677 F.2d 1061 (5th Cir.1982) (criticizing trial court's direct submission of validity question to jury).

In the instant case, no suggestion is made that the instructions were improper. "Instructions are considered adequate if the jury is given an appropriate understanding of the controlling law and of its role in the decision-making process," *Farmhand,* 693 F.2d at 1142. The jury was charged fully on the legal standards applicable to infringement, including the doctrine of equivalents and file wrapper estoppel. The trial judge was reluctant to include an explicit construction of the claim in his instructions out of concern that such an instruction would, in this case, effectively direct a verdict for the party whose interpretation he accepted.[3] The judge opted for a jury determination, guided by adequate instructions.

In advancing the application for the '875 patent Continental's *de cujus* yielded exclusive claims to the movable-head concept. Accordingly, the infringement question, including the meaning of the challenged claim, focused on the door structures. Prather's design incorporates a side-operating double door device which, as Prather concedes, is more expensive and less efficient than '875's single-door design in which the module support is "carried by said top member." We perceive no meaning to be assigned to these words as a matter of law. Rather, the interpretation of this phrase, like the crucial phrase in *Control Components,* was properly a jury

determination. The trial judge so concluded. We agree.

The judgment of the district court is AFFIRMED.

---

**3.** Counsel for Continental recognized the double-edged danger of an instruction construing the claim. In urging such an instruction, citing *Continental Oil Co.* and *Weidman,* he merely offered: "I am suggesting that you might want to consider it and hear argument on it or just leave it go." When the judge later concluded, "I don't see how we are going to do it," counsel replied, "I do not propose it ... I don't think they need an instruction." We do not base our decision on this issue upon any suggested failure of counsel properly to preserve objection to the lack of a construing instruction since, as we conclude *infra,* the judge acted within his discretion in submitting the infringement issue to the jury.