761 F.2d 649
 225 U.S.P.Q. 985
 KORI CORPORATION, Huey J. Rivet, and Louis Woodson, Appellees,
v.
WILCO MARSH BUGGIES AND DRAGLINES, INC., John M. Wilson,
Sr., Dean R. Wilson, and Robert J. Wilson, Jr., Appellants.
 Appeal No. 84-1143.
 United States Court of Appeals,
Federal Circuit.
 May 2, 1985.
 
 Jeffrey W. Tayon, Butler & Binion, Houston, Tex., argued for appellants. With him on the brief was Ned L. Conley, Houston, Tex.
 Nathan Greenberg, Greenberg & Dallam, Gretna, La., was on the brief for appellants.
 Bernarr R. Pravel, Pravel, Gambrell, Hewitt & Kimball, Houston, Tex., argued for appellees. With him on the brief were James B. Gambrell, Charles C. Garvey, Jr., Charles M. Cox and Charles D. Simmons, Houston, Tex.
 Before RICH, BENNETT and BISSELL, Circuit Judges.
 RICH, Circuit Judge.
 
 
 1
 This appeal is from the judgment of the United States District Court for the Eastern District of Louisiana (Judge Robert F. Collins) in the damages portion of a bifurcated bench trial, holding Wilco Marsh Buggies and Draglines, Inc., et al. (Wilco) liable for damages of $1,113,660.11 for infringement of U.S. Patent No. 3,482,785 ('785 patent). 561 F.Supp. 512, 217 USPQ 1302 (E.D.La.1982).[1] The United States Court of Appeals for the Fifth Circuit (Fifth Circuit) has already affirmed the judgment of the district court, holding the Kori Corporation et al. (Kori) '785 patent valid and infringed, 708 F.2d 151, 219 USPQ 286 (5th Cir.1983), and on Wilco's motion, has transferred the damages portion of the bifurcated proceedings to this court. We affirm.
 
 Background
 
 2
 Kori Corporation is an exclusive sub-licensee under the '785 patent. The '785 patent was originally issued to Huey J. Rivet on October 22, 1974, for an invention entitled "Amphibious Marsh Craft." Rivet subsequently granted Louis J. Woodson, whose family owns Kori Corporation, an exclusive license under the '785 patent. Woodson then granted an exclusive sub-license to Kori Corporation.
 
 
 3
 The '785 patent concerns an improved pontoon-type endless-track amphibious vehicle which will operate in swamps. The patented improvement relates primarily to the vehicle's ability to carry heavy equipment through obstruction-ridden, tree stump-studded swamps. Previously, marsh craft of this type were suited only for hauling equipment through open marshes, frequently broke down, and required the use of huge timber mats ("matting") to support earthmovers in order to clear away tree stumps when it was necessary to venture into the swamps. The marsh craft developed by Rivet was structurally stronger and more watertight than earlier marsh craft, and was capable of traversing stump-dotted swampland without matting or preclearing.
 
 
 4
 Robert J. Wilson, Sr., learned the design details of the Rivet pontoon when he worked for Rivet during 1974 as a contract welder. After completion of his welding contract with Rivet, Wilson began building Rivet-type pontoons for defendant Wilco Marsh Buggies and Draglines, Inc., a corporation formed and owned by his three sons, defendants-appellants John M. Wilson, Sr., Dean R. Wilson, and Robert J. Wilson, Jr. Wilco bought a Rivet craft, obtained a copy of the '785 patent, and began making and selling a vehicle strikingly similar to the Rivet amphibious marsh craft manufactured by Kori.
 
 
 5
 Rivet, Woodson, and Kori filed this suit against Wilco and the Wilson brothers, seeking injunctive relief and damages for patent infringement. The district court issued separate decisions on the issues of liability and damages. In its liability decision, the district court held that the '785 patent was valid and infringed, and that the defendants, by actively inducing infringement of the '785 patent, were liable as infringers. 561 F.Supp. at 521-22. The Fifth Circuit affirmed on June 27, 1983.
 
 Decision Below
 
 6
 After its initial decision on liability, the district court issued its separate memorandum opinion on damages on August 30, 1982, deciding four issues: pecuniary damages, prejudgment interest, attorney fees, and exemplary damages. 561 F.Supp. at 523, 217 USPQ at 1302.
 
 
 7
 The district court awarded Kori pecuniary damages of $516,803.30, calculating damages on the basis of profits lost because of defendants' sales of infringing units for use outside the United States and profits lost on rental of infringing units within the United States. Lost profits were calculated at $379,497, based on defendants' sale of six machines. The court also determined that lost rental profits amounted to $137,311.30, based on the defendants' profits for 4850 hours rental at a profit of $28.31 per hour.
 
 
 8
 The district court concluded that prejudgment interest should not be awarded because the record was not clear with regard to the date or dates from which interest should run. However, the court noted that it would consider the fact that plaintiffs should be compensated for the delay in receiving the lost profits owed to them in determining whether to impose exemplary damages. The court also awarded plaintiffs $50,000.00 in attorney fees and $28,943.51 in costs.
 
 
 9
 Finally, pursuant to 35 U.S.C. Sec. 284, the district court doubled the pecuniary damage award to $1,033,616.60. The court found that defendants willfully and deliberately infringed, having copied the essential parts of the amphibious craft, knowing it to be patented, and having no good faith belief that the patent was invalid. The court noted that the defendants willfully copied the invention of the '785 patent without soliciting the advice of counsel, and only sought the advice of a qualified patent attorney after plaintiffs had brought suit to enforce the patent. In determining the amount of exemplary damages, the court considered the fact that the actual pecuniary damages it had calculated were not "sufficient to fully compensate plaintiffs," and included the portion of damages which the court found it had been unable to determine exactly, including prejudgment interest.
 
 OPINION
 
 10
 In pertinent part, 35 U.S.C. Sec. 284 provides that "the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use of the invention by the infringer...." In Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457, 141 USPQ 681, 694 (1964), the Supreme Court said that a patent holder's damages
 
 
 11
 have been said to constitute "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." ... The question to be asked in determining damages is "how much had the Patent Holder and Licensee suffered by the infringement. And that question [is] primarily: had the Infringer not infringed, what would Patent Holder-Licensee have made?" .... [Citations omitted.]
 
 
 12
 See also General Motors Corp. v. Devex Corp., 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211, 217 USPQ 1185 (1983).
 
 
 13
 The district court found that Wilco built at least twelve infringing machines. Kori sought to base damages on the profit derived from Wilco's sale of six of these machines, as well as profits from Wilco's rental of other infringing units. Wilco contended that a reasonable royalty was the appropriate measure of damages.
 
 Reasonable Royalty
 
 14
 Wilco's argument that Kori is entitled only to a reasonable royalty is grounded on the assertion, based on the district court's Finding of Fact No. 8, that Kori Corporation is merely a non-exclusive licensee. Finding of Fact No. 8, in the district court's liability opinion, reads: "Plaintiff Kori Corporation ... is named as a non-exclusive sub-licensee under the patent in suit." 561 F.Supp. at 515. However, counsel for Wilco stipulated to the fact that Kori Corporation was an "exclusive sub-licensee" in a pre-trial order. Moreover, in its damages opinion, the district court indicated that Rivet had granted an "exclusive license to Louis Woodson and Kori Corporation." 561 F.Supp. at 524, 217 USPQ at 1304.
 
 
 15
 The record before this court on appeal includes all original papers filed in the district court, including pre-trial orders. Fed.R.App.P. 10(a), United States Court of Appeals for the Federal Circuit Rule 11. The district court's Finding of Fact No. 8, that Kori is a "non-exclusive sub-licensee," is either a "slip of the pen" or is clearly erroneous. Wilco's argument that a reasonable royalty is the proper measure of damages is therefore based on an erroneous assumption. Kori is entitled to be compensated on the basis of its ability to exploit the patent. See Bio-Rad Laboratories v. Nicolet Instrument Corp., 739 F.2d 604, 616, 222 USPQ 654, 663 (Fed.Cir.1984).
 
 Lost Profits
 
 16
 When a patent holder would have made the sale of a product "but for" the infringement, the award of his lost profits is proper. Paper Converting Machine Co. v. Magna Graphics Corp., 745 F.2d 11, 21, 223 USPQ 591, 598 (Fed.Cir.1984); Bio-Rad, 739 F.2d at 616, 222 USPQ at 663. Moreover, when the parties involved in an action are the only suppliers in the market, lost profits are a particularly appropriate measure of damages. Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065, 1068, 219 USPQ 670, 675, 678 (Fed.Cir.1983).
 
 
 17
 The district court found that Kori would have sold or rented the machines built by Wilco were it not for Wilco's infringement. Although Wilco argued that there were non-infringing substitutes available, the district court's conclusion was based on findings that Wilco "directly competed" for the sale of these machines with Kori, and that "from a buyer's perspective, the only acceptable substitute for the patented Kori machines were the infringing machines." 561 F.Supp. at 526, 217 USPQ at 1306. The court therefore properly awarded damages based on Kori's lost profits for the infringing sales and rentals of Wilco's machines.
 
 
 18
 In proving damages, the patent owner's burden of proof is not absolute, but rather one of reasonable probability. Lam, Inc. v. Johns-Manville, 718 F.2d at 1065, 219 USPQ at 675. The district court is free to use its discretion in choosing a method for calculating damages, as long as the measure of damages is just and reasonable. Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931); Paper Converting, 745 F.2d at 22, 223 USPQ at 599; Lam, Inc. v. Johns-Manville, 718 F.2d at 1065, 219 USPQ at 675.
 
 
 19
 The district court accepted Kori's expert's calculations of Wilco's profits of $379,497 on the six infringing machines. The court also awarded Kori its lost profits of $137,311.30 calculated on the basis of Wilco's rental of infringing machines. Wilco does not dispute these figures, but instead challenges the propriety of using its (Wilco's) profits to estimate Kori's lost profits.
 
 
 20
 The district court found evidence of Wilco's profits to be a reasonable estimate of the profits Kori would have earned had it made the sales. Kori, 561 F.Supp. at 528, 217 USPQ at 1307-08. See also 561 F.Supp. at 530, 217 USPQ at 1309. Wilco asserts that this finding amounted to an award of their (Wilco's) profits per se. Kori contends, however, that the district court used Wilco's profits only as a "yardstick" to measure Kori's lost profits.
 
 
 21
 Prior to 1946, the patent laws provided for recovery of both the patentee's damages and the infringer's profits. R.S. 4921 provided that "the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby ..." (emphasis added). This arguably implied that the successful plaintiff would have been placed in a better position than he would have been if the infringer had not infringed because, in addition to being able to recover his own damages (thereby placing him in the position he would have been without the infringement), the old statute allowed the patentee to force the infringer to "disgorge" any profits the defendant may have earned as well. The 1946 amendment to the damages provisions effectively eliminated this double recovery. After the 1946 amendment (Act of August 1, 1946, ch. 726, 60 Stat. 778, 35 U.S.C. Sec. 70), R.S. 4921 provided that "the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor ...." However, the omission of the language providing for recovery of the infringer's profits should not be construed to mean that an infringer's profits cannot be considered in estimating plaintiff's damages.[2]
 
 
 22
 The legislative history of the 1946 amendments clearly indicates that one of its purposes was to eliminate the necessity of the traditional accounting to determine the infringer's profits in all damages determinations, and to deter the use of such proceedings by successful patentees to harass the infringer. See, e.g., H.R.Rep. No. 1587, 79th Cong., 2d Sess. (1946), adopted as the report of the Senate Committee on Patents, S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), at 2; reprinted in U.S.Code Congressional Service (1946) at 1386-87:
 
 
 23
 The object of the bill is to make the basis of recovery in patent-infringement suits general damages, that is, any damages the complainant can prove, not less than a reasonable royalty, together with interest from the time infringement occurred, rather than profits and damages.
 
 
 24
 ....
 
 
 25
 Although the bill would not preclude the recovery of profits as an element of damages, yet by making it unnecessary to have proceedings before masters and empowering equity courts to assess general damages irrespective of profits, the measure represents legislation which in the judgment of the committee is long overdue.
 
 
 26
 However, evidence of an infringer's profits may be relevant to the amount of patentee's damages in certain circumstances. Here, where the patentee can establish that he would have made the sales of the patented products, but for the fact that the infringer made them, the infringer's profits were properly looked at for comparison purposes with the patentee's proof of his lost profits.
 
 
 27
 By the Patent Act of 1952, the former provisions of R.S. 4919 and 4921 relating to damages were combined in Sec. 284. See the Reviser's Note reproduced in 35 U.S.C.A. following Sec. 284 and P.J. Federico's "Commentary on the New Patent Act" at 56.
 
 
 28
 In Aro, supra, the Supreme Court cited three cases in support of its statement that "it is clear that under the present statute only damages are recoverable." 377 U.S. at 506, 84 S.Ct. at 1542, 141 USPQ at 694. In the first case, Ric-Wil Co. v. E.B. Kaiser Co., 179 F.2d 401, 407, 84 USPQ 121, 126-27 (7th Cir.), cert. denied, 339 U.S. 958, 70 S.Ct. 981, 94 L.Ed. 1369, 85 USPQ 526 (1950), the Seventh Circuit noted that "profits realized by an infringer are not recoverable as such." However, said the court: " 'General damages' is a broad term which no doubt may include numerous elements depending upon the circumstances of the case. And whether an infringer's profits is an element of such damages depends upon the facts of each individual case." In the second case cited by the Court, Livesay Window Co. v. Livesay Industries, Inc., 251 F.2d 469, 472, 116 USPQ 167, 169 (5th Cir.1958), the Fifth Circuit said: "Profits, as such, are not recovered.... The profit is but the true measure of that which infringement has taken from the patent owner...." The master in the Livesay case calculated damages by ascertaining the total dollar sales of the infringer, multiplying that by licensee-claimant's profit rates, and then adding a 6 percent royalty which the licensee was paying the patentee. Defendant-infringer's contention that the award should have been limited to a reasonable royalty was rejected. Similarly, in the third case cited, Laskowitz v. Marie Designer, Inc., 119 F.Supp. 541, 555, 100 USPQ 367, 376 (S.D.Cal.1954), the district court conceded that "[t]he profits of the infringer may be the measure, when no other is adequate. ... In ascertaining damages, the object has always been to approximate, as nearly as possible, the actual loss suffered by the patentee."
 
 
 29
 Thus, although the Court in Aro said that only "damages" are recoverable under the patent statute, the legislative history of the 1946 amendments and the cases cited in Aro show that, under proper circumstances, an infringer's profits may be considered in establishing a patent holder's general damages, that is, "damages adequate to compensate for the infringement." 35 U.S.C. Sec. 284.
 
 
 30
 In the present case, the district court considered evidence submitted by Kori which indicated that Kori's percentage gain on the sale and rental of infringing units would have been substantially similar to Wilco's percentage gain, and also considered evidence that Kori would have had lower overhead expenses. Rather than increase its estimate of Kori's lost profits based on Kori's possibly lower overhead expenses, the court found in Wilco's profit margin a reasonable approximation of Kori's lost profits. Thus, although Kori is not entitled to an award of Wilco's profits per se, the district court did not err in this case in using Wilco's profits to estimate Kori's lost profits. Wilco is not entitled to any higher level of certainty in calculation of Kori's lost profits. Fundamental principles of justice require us to throw any risk of uncertainty upon the wrongdoer rather than upon the injured party. Story Parchment, 282 U.S. at 563, 51 S.Ct. at 250. Considering that the court did not use its full discretionary authority in increasing the amount of the damage award, we conclude that the court's overall determination was reasonable.
 
 
 31
 Finally, Wilco contends that the district court erred in calculating damages based on the entire cost of the amphibious marsh craft, rather than on the portion of the machines that includes the patented pontoon structure. The district court applied the "entire market value rule" and declined to apportion the damages between the value of the unpatented and patented features of the machines sold and rented. In Paper Converting, this court explained the "entire market value rule" as allowing "the recovery of damages based on the value of an entire apparatus containing several features, even though only one feature is patented." 745 F.2d at 22, 223 USPQ at 599. The United States Court of Claims[3] stated that under the "entire market value rule" it is the "financial and marketing dependence on the patented item under standard marketing procedures" which determines whether the non-patented features of a machine should be included in calculating compensation for infringement. Leesona Corp. v. United States, 599 F.2d 958, 974, 220 Ct.Cl. 234, 202 USPQ 424, 439 (1979). The ultimate determining factor is whether the patentee or its licensee can normally anticipate the sale of the unpatented components together with the patented components. Paper Converting, 745 F.2d at 23, 223 USPQ at 599; Tektronix, Inc. v. United States, 552 F.2d 343, 351, 213 Ct.Cl. 257, 193 USPQ 385, 393 (1977).
 
 
 32
 The district court found "no evidence that the unpatented heavy uppers [of the amphibious marsh craft] have been or could be used independently of the patented pontoon structure." 561 F.Supp. at 530, 217 USPQ at 1309. Kori would therefore have normally anticipated the sale of an entire machine, including both the patented and unpatented components. Accordingly, the district court properly awarded damages based on the entire market value of the infringing machines.
 
 Exemplary Damages
 
 33
 In pertinent part, 35 U.S.C. Sec. 284 provides: "[T]he court may increase the damages up to three times the amount found or assessed." The district court determined that defendants' infringement was willful and doubled its award of pecuniary damages to $1,033,616.60.
 
 
 34
 A finding of willful infringement is a finding of fact. Our review, therefore, is limited to deciding whether that finding is clearly erroneous. Fed.R.Civ.P. 52(a); Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1577, 220 USPQ 490, 493 (Fed.Cir.1983); Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389, 219 USPQ 569, 576 (Fed.Cir.1983).
 
 
 35
 The finding of willful infringement in this case was based on defendants' failure "to establish good faith reliance upon an authoritative opinion of invalidity" from counsel before beginning to manufacture the infringing units. 561 F.Supp. at 533, 217 USPQ at 1311. Wilco argues that a letter sent to Marine Contractors Company, a potential customer, by their original defense counsel in this infringement suit constitutes "confirmation by counsel of the invalidity of the ['785] patent prior to the infringing sales and rentals for which plaintiff seeks damages." The letter was written after this infringement suit was commenced by Kori, recounts that Wilco has challenged the validity of Kori's patent in the litigation, and included a statement by Wilco's counsel that says "I have every reason to believe that the validity of the aforesaid patent cannot be maintained and that it will be declared to be null and void by the court handling the litigation." Such a conclusory account of defense counsel's aspirations for winning an infringement suit without any supporting reasons does not amount to an "authoritative opinion" upon which a good faith reliance on invalidity may be founded. Central Soya, 723 F.2d at 1577, 220 USPQ at 492. The district court considered this evidence and concluded that Wilco had willfully infringed, with no good faith belief that the patent was invalid. Wilco has failed to show that the district court's finding of willful infringement was clearly erroneous. Accordingly, it did not abuse its discretion in doubling the pecuniary damage award as exemplary damages.
 
 Attorney Fees and Costs
 
 36
 "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. Sec. 285. Having found this to be a case of willful infringement, the district court's discretionary award of attorney fees and costs in the amount of $78,943.51 was proper. No showing has been made that the award was an abuse of discretion.
 
 Liability of Individual Defendants
 
 37
 Wilco appeals the district court's denial of its motion to dismiss the case against the individual defendants. In a memorandum opinion denying the motion, the court held the individual defendants jointly liable for damages with the corporate defendant for inducing infringement. See also the district court's published liability opinion, 561 F.Supp. at 522 (Conclusion of Law No. 23). The court relied on the Fifth Circuit decision in Mead Johnson & Co. v. Baby's Formula Service, Inc., 402 F.2d 19, 23, 159 USPQ 328, 331 (5th Cir.1968), holding the individual defendants liable because they controlled and directed the acts of the corporation.
 
 
 38
 The district court's decision denying Wilco's motion to dismiss was part of its original decision on liability. The Fifth Circuit has already affirmed the district court's liability decision in all respects. 708 F.2d at 156, 219 USPQ at 289. Issues decided at an earlier stage of litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case. See 1 J. MOORE, FEDERAL PRACTICE p 0.404, n. 15 (1984).
 
 
 39
 The law of the case doctrine is that courts should generally "refuse to reopen what has been decided." Messenger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). The doctrine precludes our reconsideration of the Fifth Circuit's liability decision unless one of three "exceptional circumstances" exists: the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice. Central Soya, 723 F.2d at 1580, 220 USPQ at 495.
 
 
 40
 Wilco has presented no evidence that any of the three "exceptional circumstances" exists in this case. The decision of the Fifth Circuit holding the individual defendants liable therefore stands.
 
 Conclusion
 
 41
 The decision of the district court on the accounting is in all respects affirmed.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 The F.Supp. report cited includes both the findings of fact and conclusions of law on both liability and damages and the memorandum opinion on damages only. The USPQ report contains only the memorandum opinion. As will appear, this appeal is limited to damages
 
 
 [2]
 "General damages" may be distinguished from "damages" in the traditional sense. The term "damages" was formerly defined by the Supreme Court as "what the owner of the patent loses by such infringement" in Duplate Corp. v. Triplex Co., 298 U.S. 448, 451, 56 S.Ct. 792, 793, 80 L.Ed. 1274, 29 USPQ 306, 308 (1936), where the Court also said, "what the infringer makes is profits."
 
 
 [3]
 This court has adopted the body of law established by its predecessor courts, The United States Court of Claims and the United States Court of Customs and Patent Appeals. South Corp. v. United States, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982)